IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA S. BRESCOL, | ) | CASE NO. 3:13 CV 2167 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Patricia S. Brescol under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Brescol, who was 51 years old at the time of the hearing,[11] has a high school education[12] and has past relevant work experience as a motor vehicle assembler and laborer.[13] She has lived independently in an apartment, and the ALJ found that she is able to care for herself, use public transportation, and visit with grandchildren.[14]

The ALJ, whose decision became the final decision of the Commissioner, further found that Brescol had the following severe impairments: coronary artery disease, status-post coronary artery bypass surgery; hypertension; diabetes mellitus; bilateral carpal tunnel syndrome; degenerative joint disease of the left knee; and diabetic neuropathy.[15]

---

[6] ECF # 16.

[7] ECF # 22 (Brescol's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 22-2 (Brescol's charts); ECF # 23-1 (Commissioner's charts).

[9] ECF # 22-1 (Brescol's fact sheet).

[10] ECF # 26.

[11] Transcript ("Tr.") at 23, 25.

[12] *Id.* at 23, 41

[13] *Id.* at 23.

[14] *Id.* at 18.

[15] *Id.* at 15.

After concluding that the relevant impairments did not meet or equal a listing, including Listing 12.00C for mental impairments, the ALJ made the following finding regarding Brescol's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant: is limited to only occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolding; only occasional fingering and feeling; and she needs to avoid even moderate exposure to vibration and concentrated exposure to hazards.[16]

The ALJ decided that this RFC precluded Brescol from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Brescol could perform.[18] The ALJ, therefore, found Brescol not under a disability.[19]

## C.  Issues on judicial review and decision

Brescol asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Brescol presents the following issues for judicial review:

---

[16] *Id.* at 20.

[17] *Id.* at 23.

[18] *Id.* at 24.

[19] *Id.*

- At step two the ALJ found that Brescol had no severe mental impairments. At step four the ALJ included no mental limitations in the RFC finding. Does substantial evidence support the ALJ's decision to exclude mental impairments and limitations from his findings?

- The ALJ's RFC finding contains a limitation to "only occasional fingering and feeling." In making that finding, the ALJ discounted Brescol's statements about the intensity, persistence, and limiting effects of pain caused by the severe impairment of carpal tunnel syndrome. Did the ALJ properly analyze Brescol's complaints of pain in determining her RFC?[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.  Standards of review**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[20] *See*, ECF # 22 at 1. Counsel agreed at the oral argument that these are the issues to be decided in this case.

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.    Credibility*

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[24]

The Social Security Administration has recognized by policy interpretation ruling and regulation that, even in the absence of such objective medical evidence, a claimant may

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 988-89 (N.D. Ohio 2003).

experience pain severe enough to impose limitations on the capacity for work.[25] In such cases, the ALJ must evaluate the credibility of the claimant's allegations of pain and pain-induced limitations.[26]

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[27] A court may not disturb the ALJ's credibility determination absent compelling reason.[28]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[29] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[30]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that

---

[25] *Id.* at 989, quoting Soc. Sec. Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996), and 20 C.F.R. § 416.929(c)(2).

[26] *Id.*

[27] *Buxton*, 246 F.3d at 773.

[28] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[29] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[30] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

"other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[31] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement. The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[32] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

---

[31] 20 C.F.R. § 404.1529(c)(3).

[32] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[33]

## B. Application of standards

As to the initial issue of Brescol's mental condition, and the finding that she has no severe impairments in this regard, I note that the ALJ relies on several opinions for this determination. First, there is the opinion of David Biscardi, Ph. D., the state agency reviewing psychologist.[34] The ALJ gave "great weight" to Dr. Biscardi's opinion of March, 2011, that Brescol had mental impairments but that they were not severe.[35] In addition, the ALJ:

- gave significant weight to the October, 2009, opinion of Christopher Layne, Ph.D., a consulting examining psychologist, that Brescol did not have a mental impairment nor was she functionally impaired in six specific work-related areas;[36]

- gave great weight to the March, 2011. opinion of Daniel Watkins, Ph.D., a consulting examining psychologist, assigned Brescol a GAF score of 70, and opined that Brescol was not impaired in most areas of

---

[33] SSR 96-7p, 61 Fed. Reg. at 34484.

[34] Tr. at 669-79.

[35] *Id.* at 17.

[36] *Id.* at 16.

-8-

> work-related functioning, and only mildly impaired in the remaining areas;[37] and

- gave no specific weight to the results of a June, 2011, evaluation by Melissa Swanson, Ph.D., a consulting examining psychologist, which found that although Brescol had a below average IQ and reported symptoms of depression, her mental impairments were mild and not disabling.[38]

Brescol raises two major issues in this regard.

First, she contends that Dr. Swanson identified specific problems with attention and working memory, and that both Dr. Layne and Dr. Watkins found similar problems in the same area.[39] Thus, she argues, rather than relying on the very specific problems outlined by all three consulting sources, the ALJ incorrectly relied on the conclusions of Dr. Layne and Dr. Watkins.[40]

Further, she contends that any reliance at all on the opinion of Dr. Biscardi, the state reviewing source, was improper because that opinion was out-of-date.[41] In particular, she alleges, the March, 2011, opinion by Dr. Biscardi did not take into account the June, 2011,

---

[37] *Id.* at 16-17.

[38] *Id.* at 17.

[39] ECF # 22 at 6-7.

[40] *Id.* at 7.

[41] *Id.* at 7-8.

evaluation by Dr. Swanson that included multiple tests and found Brescol severely impaired in attention on a performance test.[42]

As concerns the reliance on Dr. Biscardi's opinion, I note first that Brescol is correct in pointing out that an ALJ must at least address the fact that a reviewing source relied on an incomplete record before assigning greater weight to that opinion than the weight given to other sources.[43] That said, however, any error in this respect was harmless in that the ALJ also gave great weight to Dr. Watkins's opinion, and Dr. Watkins actually examined Brescol, basing his opinion on that examination and not on a records review. Thus, diminishing the weight given to Dr. Biscardi's opinion does not prejudice Brescol's case on the merits by removing the only opinion evidence supportive of the ALJ's finding to which the ALJ gave great weight.[44]

Of potentially greater importance is the argument that the ALJ improperly relied on the opinions of Dr. Layne and Dr. Watkins when both of those opinions also found problems with attention and working memory similar to the problems identified by Dr. Swanson. But, as the ALJ expressly noted,[45] whatever individual details may have been found by Dr. Watkins in his examination, he clearly stated his conclusion that Brescol's

---

[42] *Id.*

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

[44] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citations omitted).

[45] Tr. at 16.

ability to sustain attention and concentration "was adequate for purposes of an ordinary eight-hour day."[46] Moreover, the ALJ also clearly noted that Dr. Layne, as well, specifically concluded that Brescol was not impaired in the areas of maintaining attention to simple, repetitive tasks or understanding and following instructions.[47] A review of Dr. Layne's notes shows that he arrived at the conclusion that Brescol was unimpaired in work-related mental abilities after he discussed her performance on various cognitive functioning tests that Dr. Layne characterized as showing either "borderline" attention and memory, or "moderately impaired attention."[48]

In sum, there is no indication that either Dr. Layne or Dr. Watkins was unaware of the issues now raised by Brescol. However, while both reports gives a clear indication that both sources knew about the underlying test results, each source evaluated the raw test data as only reflecting a less than debilitating impairment. Such an interpretation of raw data is precisely what expert sources are expected to do. Thus, I find no error in the ALJ relying on

---

[46] *Id.* (referring to Tr. at 661).

[47] *Id.*

[48] *Id.* at 493-94.

the reports in question, which expressly acknowledge the issues raised by Brescol, but arrive at a conclusion different than she does as to the severity and impact of those issues.[49]

Further, to the extent that Brescol now asserts that the ALJ failed to consider whether a combination of impairments could have been disabling, or simply looked at each impairment in a vacuum,[50] I note that such an argument apparently misses the fact that the ALJ did expressly make such a finding.[51]

As to the second issue, Brescol focuses on the recognized severe impairment of bilateral carpal tunnel syndrome[52] and the corresponding RFC limitation of only occasional fingering and feeling.[53] Brescol argues that as she testified at the hearing she experiences substantial pain in her hands making it difficult to hold or manipulate anything. She argues that the ALJ did not undertake pain analysis as required by the regulations and, therefore, did not properly evaluate her pain complaints. In essence, this is a challenge to the ALJ's credibility finding.

---

[49] Brescol contends that it was error for the ALJ not to have specifically mentioned the specific individual tests done by Dr. Layne and Dr. Watkins before crediting their final opinions. ECF # 24 at 2. In fact, as discussed above, the ALJ's summary of each report is sufficiently thorough to show that the ALJ read the reports and so was aware of the component parts of each examination. Moreover, Brescol has not shown, nor could she show, that it is mandatory for an ALJ to discuss in detail every individual feature of an examination before crediting an opinion based on that examination.

[50] ECF # 24 at 3.

[51] Tr. at 16.

[52] *Id.* at 15.

[53] *Id.* at 20.

The ALJ discounted Brescol's complaints for the express reasons that her daily activities indicate an ability to function beyond the limitations that she reports, that the medical records show that medications have been relatively effective in controlling her symptoms, and her "unpersuasive appearance and demeanor while testifying at the hearing."[54] The ALJ also makes reference to her unwillingness to complete physical therapy as bringing into question her credibility.[55]

Brescol argues that these reasons do not sufficiently cover the factors for assessing credibility and the extent of subjective pain set out in the regulations. Brescol also submits that failure to complete physical therapy should not be held against her because the record shows that completing physical therapy would not have given her relief.

The Commissioner places substantial reliance on the initial function report filled out by Brescol three years before the ALJ's decision. In that report, Brescol detailed daily activities that would require use of the hands.[56] Brescol relies on the treatment notes of her treating neurologist, Glenn P. Rothhaas, D.O. Dr. Rothhaas supplied a report in which he reported mixed findings.[57] The record also contains treatment notes from Dr. Rothhaas.[58] Dr. Rothhaas did not offer an RFC opinion. The ALJ does discuss Dr. Rothhaas's treatment

---

[54] *Id.* at 21.

[55] *Id.* at 23.

[56] *Id.* at 228.

[57] *Id.* at 711-14.

[58] *Id.* at 589-92, 641-55, 711-14.

and observations in his decision.[59] Although the ALJ acknowledges Dr. Rothhaas's diagnosis of neuropathy and carpal tunnel syndrome, he concludes that he has accommodated that impairment by limiting Brescol to occasional fingering and feeling.

Brescol makes the point that occasional fingering and feeling is durational, whereas her problem is her inability to finger and feel. In other words, she challenges whether the limitation incorporated in fact addresses the kind of limitations imposed by her carpal tunnel syndrome.

This is a credibility issue and the ALJ need not necessarily address all of the factors in the regulations in evaluating credibility. As I have stated in various opinions, including *Cross v. Commissioner of Social Security*,[60] the ALJ has broad discretion in assessing credibility, in part because the ALJ has the ability to view the claimant at the hearing. Here the ALJ makes the specific finding that Brescol presented "an unpersuasive appearance and demeanor" at the hearing.[61] As the case law states, there needs to be a compelling reason to disturb the ALJ's credibility opinion. Here Brescol has not presented such a compelling reason.

---

[59] *Id.* at 23.

[60] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

[61] Tr. at 21.

## Conclusion

For the reasons stated, substantial evidence supports the finding of the Commissioner that Brescol had no disability. The denial of Brescol's applications is affirmed.

IT IS SO ORDERED.


Dated: October 31, 2014						s/ William H. Baughman, Jr.
								United States Magistrate Judge